# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# BECKLEY DIVISION

STATE AUTOMOBILE MUTUAL
INSURANCE COMPANY,

        Plaintiff,

v.                          CIVIL ACTION NO. 5:17-cv-02283

ALLEGHENY MEDICAL SERVICES, et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

The Court has reviewed *State Automobile Mutual Insurance Company's Motion for Summary Judgment* (Document 26), the *Memorandum of Law in Support* (Document 27), *Responsible Pain and Aesthetic Management PLLC and J. Jorge A. Gordinho's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment* (Document 31), the *Response on Behalf of A.W., N.C., and C.N. to Plaintiff's Motion for Summary Judgment* (Document 32), and the *Reply in Support of Statue Automobile Insurance Company's Motion for Summary Judgment* (Document 33). In addition, the Court has reviewed all exhibits, as well as *State Automobile Mutual Insurance Company's Amended Complaint for Declaratory Relief* (Document 23). For the reasons stated herein, the Court finds that the motion for summary judgment should be granted.

## FACTS

The Plaintiff, State Automobile Mutual Insurance Company (State Auto) filed its initial complaint seeking declaratory relief on April 10, 2017, and filed an amended complaint on August 22, 2017. The named Defendants are Allegheny Medical Services, doing business as Responsible

Pain and Aesthetic Management PLLC (Responsible Pain), J. Jorge A. Gordinho, A.W., N.C., C.N., Danielle Mathis, and Florence Harris. Responsible Pain and Mr. Gordinho[1] operated a medical office, and obtained business owners' insurance policies, effective December 17, 2010 through December 17, 2016, from State Auto. A.W., N.C., C.N., Ms. Mathis, and Ms. Harris (State Plaintiffs) are former patients who have brought suit in state court, with various claims arising from allegations that Mr. Gordinho and/or other staff at Responsible Pain engaged in inappropriate sexual conduct toward them. State Auto filed this suit seeking a declaration that the Policy does not provide coverage related to the state court suits and that it has no duty to provide a defense in that litigation.

Responsible Pain was a medical office specializing in pain management and addiction treatment. Mr. Gordinho was the sole organizer, member, and officer. He founded the practice in March 2010, and maintained a 100% ownership interest until February 2015, when another doctor gained a 1% interest. That doctor resigned and returned the 1% interest in September 2015.

State Auto provided insurance coverage to Allegheny Medical Services, d/b/a Responsible Pain. New policies were issued for each coverage period, but the policies contain the same relevant language. As relevant herein, the policies provided coverage for "bodily injury" caused by an "occurrence." (Policy at 84, att'd as Pl.'s Ex. A to Pl.'s Reply) (Document 33-1).[2] "Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (*Id.* at 94.) An "occurrence" is "an accident, including

---

[1] Mr. Gordinho was a doctor at the time he operated the medical clinic and saw the former patients. He has since lost his medical license.
[2] The Court has used the 2010-2011 policy document attached to State Auto's reply. Because the policy is voluminous and contains multiple separately-numbered sections, the Court has used the page numbers that appear on the CM/ECF docket header.

2

continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* at 95.) The Policies exclude bodily injury "expected or intended from the standpoint of the insured." (*Id.* at 84.) Where the Policy covers a limited liability company (LLC), the LLC is an insured, and "members are also insured, but only with respect to the conduct of [the] business," as are managers "with respect to their duties as…managers." (*Id.* at 90.)

The State Plaintiffs' underlying complaints include allegations that Mr. Gordinho groped their breasts, made sexual comments during treatment, made sexual overtures seeking to meet elsewhere, and otherwise sexually harassed them. Their legal causes of action[3] include claims of battery, assault, negligence, negligent hiring, supervision, or retention, intentional and negligent infliction of emotional distress, invasion of privacy and gender discrimination. A.W., C.N., and N.C. assert damages including severe emotional distress, emotional, psychological, and mental harm, anxiety, humiliation, annoyance and inconvenience, invasion of privacy, emotional distress, pain and suffering, mental anguish, loss of ability to enjoy life, future medical expenses, and other damages. (A.W. Complaint, Document 23-3; C.N. Complaint, Document 23-4; N.C. Complaint, Document 23-5.) Ms. Mathis and Ms. Harris assert damages including past and future medical expenses, pain and suffering, humiliation, annoyance, inconvenience, emotional distress, permanent impairment, embarrassment, and loss of enjoyment of life. (Mathis Complaint, Document 23-6; Harris Complaint, Document 23-7.) The state claims remain pending with ongoing discovery.

---

3 The State Plaintiffs' complaints are not identical and do not all include the same causes of action, although the factual allegations are similar.

## STANDARD OF REVIEW

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014). A "material fact" is a fact that could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *News & Observer*, 597 F.3d at 576.

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23. When determining whether summary judgment is appropriate, a court must view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party. *Hoschar*, 739 F.3d at 169. However, the non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action." *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at

4

*3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of credibility. *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, *3 (S.D. W. Va. Mar. 31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986). If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson*, 477 U.S. at 250. If, however, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23.

## DISCUSSION

State Auto argues that it is entitled to summary judgment, and an accompanying declaratory judgment, because the Policies do not provide coverage for the allegations against Responsible Pain and Mr. Gordinho. It argues that there was no "occurrence" as defined by the Policies, that the State Plaintiffs do not allege that they suffered "bodily injury," that the "intentional acts" exclusion applies to any otherwise covered claims, and that the Policies exclude injuries sustained during medical treatment. The Defendants[4] argue that the State Claims are not limited to intentional conduct, but include claims sounding in negligence for which coverage is

---

4 Dr. Gordinho and Responsible Pain filed a response, as did A.W., N.C., and C.N. The Court has considered the arguments contained in both responses.

available. In addition, they contend that the underlying damage claims include physical, as well as psychological, harm. They further argue that the motion for summary judgment is premature, as the State Plaintiffs continue to amend their pleadings as discovery progresses.[5] The Defendants stress that an insurer's obligation to defend is broader than the obligation to provide coverage, and State Auto must provide a defense for Responsible Pain and Mr. Gordinho if any of the underlying claims are susceptible to an interpretation for which the Policies provide coverage.

In West Virginia, courts "accord the language of an insurance policy its common and customary meaning." *Boggs v. Camden-Clark Mem'l Hosp. Corp.*, 693 S.E.2d 53, 57-58 (2010). If, after giving the language its customary meaning, the provisions in an insurance policy "are plain and unambiguous and where such provisions are not contrary to a statute, regulation, or public policy, the provisions will be applied and not construed." Syl. pt. 1, *Kelly v. Painter*, 504 S.E.2d 171, 172 (1998). Courts are to determine whether a contract is ambiguous as a question of law. Syl. pt. 4, *Blake v. State Farm Mut. Auto. Ins. Co.*, 685 S.E.2d 895, 897 (2009) (noting that "[t]he mere fact that parties do not agree to the construction of a contract does not render it ambiguous"). Courts must give full effect to the plain meaning of clear and unambiguous insurance policy contract provisions. *Id.*, Syl. pt. 2. If, however, a provision is ambiguous, courts are to construe it "against the drafter, especially when dealing with exceptions and words of limitation." *Boggs*, 693 S.E.2d at 58 (internal quotation marks and citations omitted). Regardless of whether the language is ambiguous or unambiguous, "[a]n insurance company

---

5 The Defendants make similar arguments in response to a motion for an expedited hearing on the motion for summary judgment, asserting that discovery is ongoing in the underlying cases, and remains in early stages in some of the cases. The Defendants have not, however, submitted an affidavit or declaration specifically detailing information that is not yet available, but that would support their opposition to the pending motion for summary judgment. *See*, Fed. R. Civ. P. 56(d).

seeking to avoid liability through the operation of an exclusion has the burden of proving the facts necessary to the operation of that exclusion." Syl. pt. 3, *Farmers & Mechanics Mut. Ins. Co. of W. Virginia v. Cook*, 557 S.E.2d 801, 803 (2001) (citing Syl. pt. 7, *National Mutual Ins. Co. v. McMahon & Sons, Inc.*, 356 S.E.2d 488 (1987)).

The West Virginia Supreme Court described the standard for determining whether an insurance company has a duty to defend an insured as follows:

> An insurance company's duty to defend an insured is broader than the duty to indemnify under a liability insurance policy. An insurance company has a duty to defend an action against its insured if the claim stated in the underlying complaint could, without amendment, impose liability for risks the policy covers. If, however, the causes of action alleged in the plaintiff's complaint are entirely foreign to the risks covered by the insurance policy, then the insurance company is relieved of its duties under the policy.

*Bowyer v. Hi-Lad, Inc.*, 609 S.E.2d 895, 912 (W. Va. 2004). Courts are to consider whether the allegations in the underlying complaint against the insured are "reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy." Syl. pt. 4, *Tackett v. Am. Motorists Ins. Co.*, 584 S.E.2d 158, 158–60 (W. Va. 2003) (internal quotation marks and citations omitted). An insurer must defend all claims against the insured if any claims fall within the policy coverage. *Id.* at 163. Further, "[a]ny question concerning an insurer's duty to defend under an insurance policy must be construed liberally in favor of an insured where there is any question about an insurer's obligations." *Id.*, Syl. pt. 5, at 160.

West Virginia courts define "accident," for purposes of insurance contracts that do not otherwise define the term, as "a chance event or event arising from unknown causes." *West Virginia Fire & Cas. Co. v. Stanley*, 602 S.E.2d 483, 492 (W. Va. 2004). The United States District Court for the Southern District of West Virginia echoed an earlier West Virginia Supreme

7

Court of Appeals finding that, "for an event to be an accident, both the means and the result must be unforeseen, involuntary, unexpected, and unusual." *State Auto. Property and Cas. Ins. Co. v. Edgewater Estates, Inc.*, 2010 WL 1780253 at *3 (S. D. W.Va. April 29, 2010) (Faber, J.) (unreported) (internal quotations and citations omitted). Additionally, the West Virginia Supreme Court has cautioned that whether an incident was accidental should be viewed from the perspective of the insured. *Columbia Cas. Co. v. Westfield Ins. Co.*, 617 S.E.2d 797, 801 (W. Va. 2005).

Similar considerations apply to an exclusion for intentional acts. "Under an intentional acts exclusion, a policyholder may be denied coverage only if the policyholder (1) committed an intentional act *and* (2) expected or intended the specific resulting damage." Syl. Pt. 6, *West Virginia Fire & Cas. Co. v. Stanley*, 602 S.E.2d at 486 (citing Syllabus Point 7, *Farmers and Mechanics Mut. Ins. Co. v. Cook,* 210 W.Va. 394, 557 S.E.2d 801 (2001)).

West Virginia courts have considered insurance coverage in the context of sexual misconduct in several cases. *Smith v. Animal Urgent Care Inc.* involved an employee of a veterinary clinic who alleged that a veterinarian at the clinic sexually harassed her. The West Virginia Supreme Court held that "[t]here is neither a duty to defend an insured in an action for, nor a duty to pay for, damages allegedly caused by the sexual misconduct of an insured, when the liability insurance policy contains a so-called 'intentional injury' exclusion. In such a case the intent of an insured to cause some injury will be inferred as a matter of law." Syl. Pt. 3, 542 S.E.2d 827, 828 (W. Va. 2000). The court further noted that "negligence-type allegations" did not alter its conclusions, because the complaint was "at its essence a sexual harassment claim." *Id.* at Syl. Pt. 4. The *Animal Urgent Care* court also found that "in an insurance liability policy, purely mental or emotional harm that arises from a claim of sexual harassment and lacks physical

8

manifestation does not fall within a definition of 'bodily injury' which is limited to 'bodily injury, sickness, or disease.'" *Id.* at 831.

A case from the Northern District of West Virginia involved underlying allegations that a foreman at a construction site owned by the insured developer sexually assaulted three minors. *USF Ins. Co. v. Orion Dev. RA XXX, LLC*, 756 F. Supp. 2d 749, 751 (N.D.W. Va. 2010). The court concluded that the insurance company had no obligation to provide a defense because the underlying claims alleged emotional and psychological damages, but did not assert physical manifestation of those damages. Based on the reasoning of *Animal Urgent Care* and other West Virginia cases, the court concluded that "[b]ecause the plaintiffs in the underlying lawsuit have not averred that they suffered any type of injury, sickness, or disease other than emotional upset, humiliation, anguish, and the like, this Court finds that no claim has been stated under the bodily injury coverage provisions of the Policy." *Id.* at 756. Although the bodily injury finding established that the insurer was not obligated to provide coverage, the court went on to consider whether negligence allegations against the insured property owner constituted an "occurrence." Following a fact-specific examination of the underlying allegations,[6] the court concluded that, from the perspective of the insured, "the sexual molestation…was not deliberate, intentional, expected, desired or foreseen" and was therefore "an accident." *Id.* at 758.

Based on the case law, the Court finds that the underlying claims do not allege either an "occurrence" or "bodily injury," and the exclusion for intentional conduct is applicable. As in *Orion Development*, the underlying complaints assert physical *contact* related to the sexual

---

6 The underlying complaint alleged that the owner of the premises was negligent in failing to prevent the molestation and failing to exercise control over the foreman who committed the sexual assault. The court focused on the lack of any allegation of intentional conduct against the insured property owner.

misconduct, but not physical *injury*.  "Bodily harm," in the State Auto Policies at issue here and in the policies considered in prior cases, is defined narrowly, and does not include certain categories of serious harm recoverable under tort law.  The complaints here allege a variety of emotional and psychological damages, but do not contain any allegations of physical manifestations of those damages, nor do they contain specific factual allegations of physical injuries resulting from the sexual assaults.

Although the finding regarding bodily injury is sufficient to establish that State Auto is not obligated to provide a defense, the Court has considered whether the underlying allegations constitute an "occurrence."  As other courts have found, the claims based directly on the alleged sexual abuse involve intentional, rather than accidental, conduct.  The more difficult question is whether claims of negligence against Responsible Pain assert an "occurrence."  The Defendants stress that "when viewing the facts *from the standpoint of the insured*, [Responsible Pain,] the alleged sexual misconduct as to the plaintiffs was not intentional, but rather accidental." (Gordinho/Responsible Pain Response at 12) (emphasis in original.)

In a prior case, Judge Faber followed the approach of *Animal Urgent Care* to conclude that a negligent hiring claim seeking to hold an insured entity liable for the sexual misconduct of an agent did not constitute an "occurrence" because the underlying conduct was intentional.  *State Auto. Prop. & Cas. Ins. Co. v. Edgewater Estates, Inc.*, No. CIV. A. 2:09-0346, 2010 WL 1780253, at *4 (S.D.W. Va. Apr. 29, 2010) (Faber, J.).  Further, the structure of Responsible Pain, as an LLC with Mr. Gordinho as the sole owner, officer, and founder, belies any suggestion that Responsible Pain, as an entity, acted negligently with respect to its handling of Mr. Gordinho's intentional conduct.  The Court additionally notes that the Policy designates both Responsible

Pain and Mr. Gordinho as "insureds." The Court therefore finds that the underlying complaints do not allege an accident. Thus, the underlying allegations do not constitute an "occurrence." Likewise, the exclusion for intentional acts would be applicable if coverage were otherwise available, as any "bodily injury" was "expected or intended from the standpoint of the insured." (Policy at 84.) Accordingly, the Court finds that the Policies do not provide coverage for the allegations contained in the underlying complaints, and State Auto is entitled to summary judgment.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that *State Automobile Mutual Insurance Company's Motion for Summary Judgment* (Document 26) be **GRANTED**. Pursuant to 28 U.S.C. § 220, the Court **FINDS** and **DECLARES** that no coverage or duty to defend exists under the Policies at issue with respect to the injuries alleged by A.W., N.C., C.N., Danielle Mathis, and Florence Harris in the pending actions in the Circuit Court of Raleigh County, West Virginia. The Court further **ORDERS** that all pending motions be **TERMINATED AS MOOT.**

The Court **DIRECTS** the Clerk to send a certified copy of this Order to counsel of record and to any unrepresented party.

ENTER: April 17, 2018

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA